

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES E. SMITH, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:10-cv-3142-TMP** |
| | ) | |
| | ) | |
| **SCIENCE APPLICATIONS** | ) | |
| **INTERNATIONAL CORPORATION,** | ) | |
| **et al.** | ) | |
| | ) | |
| **Defendant/Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE SHERWIN-WILLIAMS COMPANY,** | ) | |
| | ) | |
| **Third-Party Defendant** | ) | |

## MEMORANDUM OPINION

This cause is before the court on The Sherwin-Williams Company's Motion to Dismiss Science Applications International Corporation's Third-Party Complaint (Doc. 41). The motion has been briefed by the Third-Party Plaintiff (Science Applications International Corporation, hereinafter "SAIC") and the moving Third-Party Defendant (Sherwin-Williams Company, hereinafter "Sherwin-Williams"). (See Docs. 41, 43, 45, and 46). Both parties involved with this motion have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge[1].

---

[1]     Currently, the United States of America, a defendant with respect to plaintiff's Smith's claim, has not consented to the exercise of dispositive jurisdiction by the magistrate judge. However, the two parties to this motion (SAIC and Sherwin) have consented to dispositive jurisdiction. Under <u>Holt-Orsted v. City of Dickson</u>, a magistrate judge may exercise dispositive jurisdiction over part of a case when all the parties to that part of the case have consented to dispositive jurisdiction. 641 F.3d 230, 234 (6th Cir. 2011) ("Thus, a § 636(c)(1) referral grants full authority to a magistrate judge to oversee all or **part of a**

Procedural Background

On August 20, 2009, James E. Smith, Jr., (hereinafter "Smith") sustained injuries while making a delivery to SAIC at the Anniston Army Depot as part of his duties as an employee of AAA Cooper Transportation. (Doc. 35, ¶¶ 1, 2). Smith filed suit against various defendants, including SAIC (Id. at ¶ 3), alleging claims for negligence and wantonness (Id., ex. A).  His complaint alleges that a ladder located at SAIC's facility collapsed under him, causing his injuries.  SAIC asserted contributory negligence by Smith as an affirmative defense, among other defenses. (Doc.1, ex. G).

At the time of the incident, SAIC had contracted with Sherwin-Williams for a delivery of paint supplies and paint-related products. (Doc. 35, ¶ 4).  Sherwin-Williams, in turn, had hired AAA Cooper Transportation to deliver the paint supplies to SAIC. (Id. at ¶ 5).  Smith, as an employee of AAA Cooper Transportation, delivered the paint supplies to SAIC (Id. at ¶ 2).

The paint supplies were delivered under "four separate SAIC purchase orders." (Id. at ¶ 5).  These purchase orders "incorporated SAIC Terms and Conditions of purchase." (Id. at ¶ 6).  The Terms and Conditions were drafted and issued by SAIC. (See Doc. 41, p. 2; Doc. 43, ¶ 2).  Paragraph 38 of the Terms and Conditions contained an indemnity provision, which states the following in relevant part:

---

**case, as consented to by the parties** and designated by the district court, 'in the same manner as a district judge would.'") (emphasis added) (citing Moses v. Sterling Commerce (America), Inc., 122 Fed. Appx. 177, 181 (6th Cir. 2005)).  Thus, even though the magistrate judge may not exercise dispositive jurisdiction in every aspect of the case, the undersigned may do so with respect to this limited motion.

2

> Seller [Sherwin-Williams] shall indemnify, defend and hold SAIC and
> SAIC's customers harmless from and against any and all damages, losses,
> liabilities and expenses (including reasonable attorneys' fees) arising out of
> or relating to any claims, causes of action, lawsuits or other proceedings,
> regardless of legal theory, that result, in whole or in part, from Seller's (or
> any of Seller's subcontractors, suppliers, employees, agents or
> representatives): (i) intentional misconduct, negligence, or fraud, (ii) breach
> of any representation, warranty or covenant made under the Purchase Order,
> or (iii) products or services including, without limitation, any claims that
> such products or services infringe any United States patent, copyright,
> trademark, trade secret or any other proprietary right of any third party.

(Doc.35, ex. B at p. 18).  SAIC argues that the indemnity provision obligates Sherwin-Williams to provide a defense and indemnity to SAIC with respect to plaintiff's claim for injury. (Id. at ¶ 9).  More specifically, SAIC contends that, because Smith's injury claims resulted from Sherwin-Williams' or Sherwin-Williams' subcontractor's delivery services, Sherwin-Williams is required to defend and indemnify SAIC under the indemnity agreement. (Doc. 43, pp. 9, 10, 18).

Sherwin-Williams counters that the indemnity provision does not apply in this factual scenario, and thus it is not obligated to provide SAIC with a defense and indemnity (Doc. 41, p. 2).  Sherwin-Williams argues that it is not obligated to defend and indemnify SAIC because Smith's injury claims did not arise from Sherwin-Williams' or its subcontractor's negligence or services. (Doc.41, pp. 3-4).  Additionally, Sherwin argues that Sherwin has no duty to defend or indemnify SAIC for SAIC's own negligence. (Id.).

<u>Standard of Review</u>

The motion to dismiss filed by Sherwin-Williams asserts that SAIC's Third-Party Complaint fails to state a claim upon which relief may be granted because the indemnity

provision does not obligate it to defend and indemnify SAIC.[2]  In evaluating a motion to dismiss, the court views the motion in the light most favorable to the non-moving party. Erickson v. Pardus, 551 U.S. 89 (2007).  Also, the court assumes the well-pleaded factual allegations in the complaint to be true and gives the plaintiff the benefit of all reasonable factual inferences.  Hazewood v. Foundation Financial Group, LLC, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).  The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981).

At the same time, though, the Supreme Court has explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the

---

[2]     The SAIC "Terms and Conditions" document is annexed to SAIC's third-party complaint as an exhibit.  Thus, the document is part of the pleading itself and can be considered by the court under a Rule 12(b)(6) motion without converting it to a Rule 56 motion.  See FED. R. CIV. P. 10(c); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (brackets in original) (footnote omitted). In essence, then, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

## Discussion[3]

SAIC contends it is entitled to a defense and indemnity from Sherwin-Williams under the terms of the "Terms and Conditions" document incorporated by reference into the four purchase orders under which SAIC bought paint and painting supplies from Sherwin-Williams. SAIC specifically contends that under the indemnity agreement between SAIC and its vendors, Sherwin-Williams is obligated to defend and indemnify SAIC "from any 'claims, causes of action, lawsuits or other proceedings, regardless of legal theory, that result, in whole or in part' from Sherwin-Williams' or its subcontractors' 'negligence . . . or (iii) services.'" (Doc. 43, p. 9). Thus, in order for Sherwin-Williams to be compelled to assume any obligation for defense and indemnity of SAIC, a claim, cause of action, lawsuit or other proceeding must have resulted from Sherwin-Williams' or Sherwin-Williams'

---

[3]    The Terms and Conditions of Purchase (which contains the indemnity agreement) contained a choice of law provision. (Doc. 35, ex. B, pg. 13). The choice of law provision designated California as the body of law to apply to construction of the document. (Id.) Neither party contests the choice of law provision. Thus, the legal analysis and discussion proceeds under relevant California law.

5

subcontractor's negligence or services.  Although SAIC does not contend that Sherwin-Williams or its subcontractor, AAA Cooper Transportation, was negligent (except, perhaps, with respect to Smith's own alleged contributory negligence while he acted as an employee of AAA Cooper), it asserts that the Smith injury arose from a "service" being provided by Sherwin-Williams and AAA Cooper, namely the delivery of paint and painting supplies purchased by SAIC.  In addition to arguing that neither its nor its subcontractor's negligence or services triggered the indemnity coverage, Sherwin-Williams has argued that it should not be required to defend and indemnify SAIC for SAIC's own negligence. (Doc. 41, pp. 4-5).

In interpreting indemnity agreements, California courts have elaborated certain interpretative presumptions. For example, California courts have stated, "[T]he contract must be interpreted so as to give effect to the mutual intention of the parties. The intention of the parties is to be ascertained from the 'clear and explicit' language of the contract." Continental Heller Corp. v. Amtech Mechanical Services, Inc., 61 Cal. Rptr. 2d 668, 668 (1997) (citations omitted).  Additionally, "[T]he courts look first to the words of the contract to determine the intended scope of the indemnity agreement." Id.  At the same time, "Any obscurity in the language of the contract is to be construed against the party causing the obscurity to exist."  Alberts v. American Casualty Co. of Reading, Pa., 200 P.2d 37, 42 (1948).  And "where a general and a particular provision of a written instrument are inconsistent, the particular controls the general." MacDonald & Kruse, Inc. v. San Jose Steel Co., 105 Cal. Rptr. 725, 730 (Ct. App. 1972) (citations omitted).

Finally, in the particular context of indemnity agreements, unlike insurance contracts, an indemnity "agreement must be strictly construed against the indemnitee." Id.  This is because "[i]ndemnity agreements are not construed like liability insurance policies. The

6

liability insurer receives a premium for protecting its insured 'against damage or liability from generally defined risks.'" City of Watsonville v. Corrigan, 58 Cal. Rptr. 3d 458, 462 (Ct. App. 2007) (quoting Heppler v. J.M. Peters Co. 87 Cal.Rptr.2d 497 (Ct. App. 1999).). Conversely, an indemnitor, such as Sherwin-Williams, does not receive premiums for its indemnity obligation and thus owes a narrower duty to defend and indemnify than an insurer. See id. (explaining that an *insurer* owes a broad duty to defend).

With these presumptions in mind, the issues inn the instant case will be examined in the following order: (1) whether Sherwin-Williams is obligated to defend and indemnify SAIC because Smith's injury claim resulted from Sherwin-Williams' or its subcontractor's "negligence"; (2) whether Sherwin-Williams is obligated to defend and indemnify SAIC because Smith injury claim resulted from Sherwin-Williams' or its subcontractor's "services"; and (3) whether Sherwin-Williams is obligated to defend and indemnify SAIC even with respect to SAIC's own (alleged) passive negligence.

A.   Negligence by Sherwin-Williams or its Subcontractor

Under the language of the indemnity agreement, it is not alleged by SAIC that Sherwin-Williams' duty defend and indemnify SAIC arose due to negligence by Sherwin-Williams or its subcontractor, AAA Cooper.  The indemnity agreement states that Sherwin-Williams "shall indemnify, defend, and hold SAIC ... harmless from and against any and all damages, losses, liabilities and expenses ... arising out of or relating to any claims, causes of action, lawsuits or other proceedings, regardless of legal theory, that result in whole or part from [Sherwin-Williams' or its subcontractor's] ... negligence...."  (Doc. 35, ex. B, p. 18).  Plaintiff Smith has not alleged any negligence on the part of Sherwin-Williams or AAA Cooper; indeed, Smith has not sued either of them.  There is no argument that any

negligence by Sherwin-Williams proximately caused Smith's injuries.  SAIC, however, has alleged an affirmative defense of contributory negligence against plaintiff Smith, as a result of which, SAIC also argues that AAA Cooper (Smith's employer) was "negligent" through its servant, Smith.

More to point, neither the original complaint, the first amended complaint, *nor SAIC's third-party complaint* alleges negligence on the part of Sherwin-Williams or its subcontractor (i.e., AAA Cooper Transportation or Smith). (See Doc. 1, ex. B; Doc. 35; Doc. 35, ex. A).   Indeed, Smith's original complaint and first amended complaint allege negligence only against SAIC, Joe Webb, the United States of America, and various fictitious defendants.  (See Doc. 1, ex. B; Doc. 35, ex. A).  Smith alleges no negligence on the part of Sherwin-Williams or AAA Cooper.  Smith's original complaint mentions AAA Cooper Transportation and Smith, but at no point alleges negligence against either one. (See Doc. 1, ex. B).  SAIC's third-party complaint likewise does not allege negligence on the part of Sherwin-Williams or one of its subcontractors. (See Doc. 35 (alleging "breach of contract and failure to assume the defense.")).   In fact, paragraph 7 of the third-party complaint alleges explicitly that the indemnity arose from "services" supplied by Sherwin-Williams or a subcontractor.

Although, according to California case law, "[a]n indemnitee [such as SAIC] should not have to rely on the plaintiff to name a particular subcontractor or consultant in order to obtain a promised defense by the one the indemnitee believes is responsible for the plaintiff's damages," UDC-Universal Dev. v. CH2M Hill, 103 Cal. Rptr. 3d 684, 692 (Ct. App. 2010), review denied (Apr. 28, 2010), the party claiming indemnity must at least identify the alleged negligence causing the injury. According to UDC-Universal,   the complaint's

8

"general description of the defects" must be examined in order to determine whether indemnity coverage exists.  In the instant case, the complaint's general description of negligence consists of premises defects and defects in a ladder on SAIC's premises, in addition to acts or omissions by those responsible for the safety, maintenance, and upkeep of the premises.  (See Doc. 1, ex. B; Doc. 35, ex. A).  The complaint's description of any alleged defects do not appear to implicate negligence by Sherwin-Williams or AAA Cooper. Likewise, SAIC's third-party complaint does not describe defects, actions, or omissions which would implicate negligence by Sherwin-Williams or AAA Cooper. (Doc. 35).  SAIC's complaint only alleges and describes Sherwin-Williams "failure to meet its contractual obligations to indemnify, defend, and hold harmless SAIC." (Doc. 35, p. 4).

The assertion of a contributory negligence defense against the plaintiff, Smith, also does not trigger the "negligence" clause of the indemnity agreement on the theory that he was an employee of AAA Cooper, thus making AAA Cooper "negligent" by *respondeat superior* principles.  No where in the third-party complaint is this theory articulated, and it may not be raised in brief when it is not pleaded.  In any event, the defense of contributory negligence is not a "claim" of negligence; it does not seek relief, but only abatement of a claim against the party pleading the defense.  It is doubtful that the contributory negligence of the plaintiff was intended by the parties to the agreement to be the type of "negligence" that triggered the indemnity provision.

In sum, neither Smith's complaint nor SAIC's third-party complaint contains claims or a general description of defects which implicate negligence on the part of Sherwin-Williams or a Sherwin-Williams subcontractor.  As such, because the negligence clause in the indemnity provision is triggered only by Sherwin-Williams' or its subcontractor's

9

negligence, and because neither Sherwin-Williams or its subcontractor is alleged to have been negligent, the negligence clause is not triggered and indemnity coverage does not exist under that clause.

      B.    "Services" by Sherwin-Williams or its Subcontractor

Under the indemnity agreement's services clause, Sherwin-Williams is not obligated to provide a defense to or indemnify SAIC because neither it nor its subcontractor, AAA Cooper, performed "services" as the term is defined in the agreement. The indemnity agreement states that Sherwin-Williams "shall indemnify, defend, and hold SAIC ... harmless from and against any and all damages, losses, liabilities and expenses ... arising out of or relating to any claims, causes of action, lawsuits or other proceedings, regardless of legal theory, that result in whole or part from [Sherwin-Williams' or Sherwin-Williams' subcontractor's] ... services." (Doc. 35, ex. B, p. 18).  Neither Sherwin-Williams nor AAA Cooper engaged in "services" as defined in the indemnity contract.

The indemnity agreement drafted by SAIC defines "services" as follows: "'Services' means the direct engagement of time and effort with the primary purpose to perform identifiable tasks rather than to furnish end items of supply." (Doc. 35, ex. B, p. 13, ¶ 1 "Definitions").  Consequently, services means to perform a task, not to furnish an end item of supply.  The indemnity agreement does not define the phrase "furnish end items of supply"; thus, it is given its general, ordinary usage. See Continental Heller Corp., 61 Cal. Rptr. 2d 668 (1997) ("[U]nless given some special meaning by the parties, the words of a contract are to be understood in their 'ordinary and popular sense.'"); (see also Doc. 46, p. 2 n.1) ("Neither SAIC nor Sherwin-Williams argues the Terms and Conditions are subject to any special meaning under trade usage, and there is no requirement that the Court consider

extrinsic evidence to determine the meaning of the word "services" as it is used in the indemnity provision."). In its general, ordinary usage, "to furnish end items of supply" means to provide, deliver, or otherwise make available an item or product.[4] Such a meaning would encompass the delivery of paint and paint supplies, that is, to deliver paint is comparable to providing or delivering or furnishing an item or product.[5] It is undisputed that Smith's injuries occurred as he was delivering paint and painting supplies to SAIC, bought from Sherwin-Williams, which had contracted with AAA Cooper (Smith's employer) to deliver the paint and supplies to SAIC. As such, the question is whether the delivery of purchased items constitutes a "service" under the terms of the indemnity agreement.

In the indemnity agreement, "services" is the performance of a task, not "the furnishing an end item of supply." (Doc. 35, Ex. B, p. 13). Because Sherwin-Williams and its subcontractor were in the process of delivering to SAIC items purchased by SAIC, they were "furnishing an end item of supply." Sherwin-Williams and its subcontractor were not performing a task apart from completion of the sales transaction, and thus were not performing a "service" as contemplated by the indemnity agreement. A necessary part of any sales transaction is delivery of the item from the seller to the purchaser; the sale is not

---

[4]     One of the definitions given for the verb "to furnish" in The Concise American Heritage Dictionary (Revised Ed., 1987) is "[t]o supply; give." Id., p. 286. Likewise, The Compact Edition of the Oxford English Dictionary (1971), vol. 1, p. 1098, gives a definition of "[t]o provide or supply *with* (something necessary, useful, or desirable, either material or immaterial)." Even Black's Law Dictionary (Fifth Ed. 1979), p. 608, defines it as "[t]o supply, provide, or equip, for accomplishment of a particular purpose."

[5]     SAIC argues that "to furnish" is more akin to providing than to delivering, and that delivering is a separate service from furnishing or providing. (Doc. 43, pp. 15-16). This argument fails because no specific definitions to this effect are given in the agreement, and any ambiguity is construed against the drafter.

complete until the delivery occurs.  Construing the language of the indemnity agreement against the indemnitee, as California law provides, the use of the ambiguous phrase "rather than to furnish end items of supply," as a limitation on the definition of "services," the court reads the definition of "services" to exclude the mere delivery of a purchased "end item[] of supply."[6]  Consequently, because Sherwin-Williams and its subcontractor were not providing a "service" merely in delivering the paint and supplies purchased by SAIC (at least as SAIC's indemnity provision defines and limits the term), Sherwin-Williams is not obligated to provide a defense and indemnity under the indemnity agreement's "services" clause.

SAIC argues that such an interpretation is flawed. (Doc. 43, pp. 11-16). First, SAIC argues that "the special definition applied to the *capitalized* word 'Services' has no bearing on the meaning of the *uncapitalized* word "services" that is found in the indemnity provision." Id. at 11 (italics in original).  Second, SAIC argues that "to furnish end items of supply" does not encompass the delivery of paint and paint supplies because furnish does not mean delivery of goods.  Id. at 15.

SAIC's arguments, while creative, cannot overcome the presumptions for interpreting indemnity agreements and the plain meanings in the indemnity agreement. To reiterate, "[T]he courts look first to the words of the contract to determine the intended scope

---

[6]     This is not to say that the delivery of sold goods can never be a "service."  It depends upon the agreement of parties to the transaction.  For example, goods might be sold "as is, where is," in which event the title and risk of loss of the goods pass to the purchaser at the place where the goods are located at the moment of sale.  The seller might, for an additional charge, provide the "service" (separate and apart from the sale itself) of arranging the delivery of the goods to another location.  In the instant case, the express language of the indemnity agreement makes clear that "furnishing" end items of sale is not regarded as a "service."

of the indemnity agreement." <u>Continental Heller Corp.</u>, 61 Cal. Rptr. 2d at 668 (citations omitted). In this instance, the indemnity agreement specifically defines "services" in a way that ambiguously excludes the "furnishing" of end items of supplies. While that phrase might be read another way, the California construction rules require construing it against the indemnitee and the author of the language.[7] The court first looks to the indemnity agreement and uses the term as it is defined in the agreement, and the phrase "furnishing end items of supply" as a limitation of the definition of "services," construed against the drafter, excludes from "services" the mere delivery of purchased goods.

SAIC argues that there is difference between "Services" (capitalized) and "services" (uncapitalized), and that furnishing end items of supply is different from delivering paint. However, California case law states that "where a general and a particular provision of a written instrument are inconsistent, the particular controls the general." <u>MacDonald & Kruse, Inc.</u>, 105 Cal. Rptr. at 730 (citations omitted). So, if the capitalized and uncapitalized versions of "services" are inconsistent, then the particular, specific meaning will control. In this instance, the particular, specific meaning is "Services" as it is defined in the indemnity agreement. Therefore, that meaning controls. Moreover, if there is a difference between "Services" (capitalized) and "services" (uncapitalized), that ambiguity is again construed against SAIC as the drafter of the language. If SAIC wanted to distinguish between the two, it should have stated so clearly in the contract.

---

[7]     California case law has stated that if there is any "obscurity in the language of the contract, [it] is to be construed against the party causing the obscurity to exist." <u>Alberts</u>, 200 P.2d at 42; <u>see</u> <u>also</u> <u>Victoria v. Superior Court</u>, 40 Cal.3d 734, 739 (Cal. 1985) ("[A]mbiguities in standard form contracts are to be construed against the drafter."). In this instance, SAIC drafted the indemnity agreement. Thus, the obscurity or ambiguity is construed against SAIC.

The indemnity agreement at issue here specifically defines "Services" to exclude "furnishing end items of supply," and because any obscurities are construed against SAIC as the drafter of the agreement, SAIC's arguments fail.  Neither Sherwin-Williams nor AAA Cooper was engaged as a "service," but rather was engaged in "furnishing an end item of supply" as the mere completion and delivery of the sales items purchased by SAIC at the time Smith was injured.  Because Smith's claim does not arise from a "service" performed by Sherwin-Williams or its subcontractor, it is not obligated to defend or indemnify under the "services" clause of the indemnity agreement.

     C.    SAIC's Passive Negligence

Sherwin is not obligated to defend or indemnify SAIC for SAIC's alleged passive negligence. Under California law, an indemnitee (such as SAIC) can be entitled to defense and indemnity for passive negligence under a general indemnity provision.  See, e.g., Rossmoor Sanitation, Inc. v. Pylon, Inc., 532 P.2d 97, 100 (Cal. 1975).  However, the language in the indemnity agreement in this instance is narrower than the language in indemnity agreements that have provided coverage for passive negligence.  "Even an indemnitee [SAIC] who has been only passively negligent may be precluded from indemnification if the contractual provision agreed upon provides indemnity only for liabilities resulting from acts of the indemnitor [Sherwin-Williams] and not from those of others."  E. L. White, Inc. v. City of Huntington Beach, 579 P.2d 505, 511 (Cal. 1978). Because the language in this indemnity agreement is narrow and only encompasses liability for the "negligence" or "services" of Sherwin-Williams and it subcontractor, Sherwin-Williams is not obligated to defend or indemnify SAIC for SAIC's alleged passive negligence.

14

In <u>MacDonald & Kruse, Inc.</u>, 105 Cal. Rptr. at 731 (citations omitted) (brackets in original), the California Court of Appeal explained that the following clauses provided indemnity coverage for an indemnitee's passive negligence:

> "to hold the indemnitee harmless from the indemnitee's liabilities 'howsoever same may be caused,'" "regardless of responsibility for negligence," "arising from the use of the premises, facilities or services of [the indemnitee]," "which might arise in connection with the agreed work," "caused by or happening in connection with the equipment or the condition, maintenance, possession, operation or use thereof," "from any and all claims for damages to any person or property by reason of the use of said leased property," "'[caused by] any person or persons whomsoever."

These quoted clauses use broad language such as "howsoever same may be caused," "regardless of responsibility," "caused by any person or persons whomsoever," or otherwise link liability to use of certain premises or property without regard to who uses the premises or property, or how the premises or property are used. They base liability not on specific parties or actions but on mere general use of the property or upon mere existence of liability of the indemnitee.

In contrast, the indemnity agreement in this case does not contain such broad language. SAIC's indemnity agreement limits liability to that which results from "Seller's (or any of Seller's subcontractors, suppliers, employees, agents or representatives): (i) intentional misconduct, negligence, or fraud, (ii) breach of any representation, warranty or covenant . . ., or (iii) products or services." (Doc. 34, ex. B, p. 18). The indemnity agreement covers liability that results from certain enumerated actions by Sherwin-Williams or a subcontractor. The indemnity agreement does not cover liability from any cause

whatsoever or from liability that may result from an act or omission of someone other than Sherwin-Williams or a subcontractor.  This type of indemnity agreement is one in which "the contractual provision agreed upon provides indemnity only for liabilities resulting from acts of the indemnitor and not from those of others." E. L. White, Inc., 579 P.2d at 511. As was elaborated in MacDonald & Kruse, Inc., 105 Cal. Rptr. at 729-30 (citations omitted):

> [W]hen an indemnitor expressly promises to be responsible for the indemnitee's liabilities caused by the indemnitor, but does not promise to be responsible for the indemnitee's liabilities caused by other than the indemnitor, the indemnitor will be held responsible for the indemnitee's liabilities that result solely from the indemnitor's negligence, but will not be responsible for the indemnitee's liabilities where the indemnitee's negligence contributed to the liability."

Consequently, the indemnity agreement here does not grant indemnity for SAIC's own (alleged) passive negligence because the indemnity agreement only covers liabilities that result from Sherwin-Williams' or its subcontractor's actions.  As such, Sherwin-Williams is not obligated to defend or indemnify SAIC for SAIC's own alleged passive negligence.

## Conclusion

SAIC's third-party complaint seeks a defense and indemnity from Sherwin-Williams on the basis of an explicit indemnity agreement. The indemnity agreement obligated Sherwin-Williams to defend and indemnify for, among other things, Sherwin-Williams' or one of its subcontractor's "negligence" or "services."  Neither Sherwin-Williams nor AAA Cooper, Sherwin-Williams' subcontractor in this case, are alleged to have been negligent

16

with respect to Smith's injuries, nor have they performed "services" as the term is defined in the agreement.  Additionally, the indemnity agreement does not cover the alleged passive negligence of SAIC, as the indemnity agreement does not purport obligate Sherwin-Williams to defend or indemnify SAIC for any acts, omissions, or services of anyone other than Sherwin-Williams and its subcontractor.  Therefore, The Sherwin-Williams Company's Motion to Dismiss Science Applications International Corporation's third-party complaint is due to be GRANTED, and SAIC's complaint seeking defense and indemnity will be DISMISSED WITH PREJUDICE.  A separate judgment will be entered pursuant to Rule 58.

DONE this 10th day of February, 2012.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE